IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAURA ANN MINOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-20-WC |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Laura Ann Minor ("Minor" or "Plaintiff") filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on June 23, 2015. R. 218. In both applications, she alleged disability beginning March 1, 2015. *Id.* Both applications were denied initially on November 10, 2015. *Id.* Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on March 17, 2017. *Id.* Following the hearing, the ALJ issued an unfavorable decision on November 1, 2017. R. 231. The Appeals Council denied Plaintiff's request for review on November 1, 2018. R. 1–4. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] Andrew Saul is now the Commission of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Proc. 25(d). See also § 205(g) of the Social Security, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

now before the Court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 12); Gov't's Consent to Jurisdiction (Doc. 11). Based on a review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact

and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security uses a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1) Is the person currently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any question leads either to the next question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step 3 leads to a determination of not disabled. *McDaniel v. Bowen,* 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To

5

do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

## IV. ADMINISTRATIVE PROCEEDINGS

Minor's date of birth is July 27, 1968, making her forty-eight years old on the date of the hearing before the ALJ, and she has an eleventh-grade education. R. 224. Following the administrative hearing in this case and employing the five-step process, the ALJ found at Step One that Plaintiff has not engaged in substantial gainful activity since the alleged date of onset. R. 221. At Step Two, the ALJ found that the claimant has the following severe impairments:

> [O]besity; mild degenerative disc disease of the lumbar, thoracic, and cervical spine; moderate osteoarthritis of the left knee; asthma and chronic obstructive pulmonary disease ("COPD"); with tobacco abuse; an asymptomatic HIV+ infection; depressive disorder, bipolar disorder, and anxiety mental disorder; and borderline intellectual functioning ("BIF") (20 CFR 404.1520(c) and 416.920(c)).

*Id.* However, after a detailed analysis in Step Three, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. R. 221–223.

Because the ALJ found that Minor's impairments did not meet any of the listings, the ALJ conducted an assessment of Minor's residual functional capacity, which he articulated as follows:

> [T]his 48 year old claimant with 11 years of education has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can sit about six hours total in an 8 hour day and for about two hours at a time, and stand and walk about six hours total and for one-to-two hours at a time during an eight-hour workday. She can lift and carry 20 pounds occasionally and up to 10 pounds frequently. There are no hand limitations. The claimant cannot climb ladders, ropes, or scaffolds or have exposure to unprotected heights. She cannot have the concentrated or excessive exposure to pulmonary irritants. To account for obesity, back and knee issues and in part for pain issues, the claimant can only occasionally operate foot controls; she can frequently bend and stoop, but can only occasionally crawl, climb, use stairs, crouch, kneel, and balance. The claimant is assessed with mild-to-moderate pain, that does not cause abandonment of task or of the workstation, and which is specifically defined as that it does not prevent the satisfactory completion of work. However, in consideration of her pain and mental issues (social) and as the same may affect her concentration, persistence and pace, I find that the claimant is limited to simple, routine, repetitive, unskilled tasks. She must work in a low social work environment, which has only casual and occasional contact with coworkers, supervisors, and mem hers of the general public. Her work must be in jobs that require little independent judgment and they should have only routine changes, with no rapid or multiple workplace changes. The claimant is assessed as Borderline Intellectual Functioning.

R. 224. In reaching these findings, the ALJ considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. *Id.* The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. *Id.*

At Step Four, the ALJ found that Minor has past relevant work as a home health aide but, because she is limited to a reduced range of light exertion, is unable to perform

7

her medium exertion past work as actually or generally performed. R. 229. In Step Five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Minor can perform. *Id.* Based on the testimony of the VE, the ALJ then identified the following representative occupations based on Minor's age, education, work experience, and RFC: garment sorter, tagger, and inspector. R. 230. Thus, the ALJ concluded that Plaintiff has not been under a disability as defined by the Social Security Act from March 1, 2015, through the date of the decision. *Id.*

## V.  PLAINTIFF'S CLAIMS

Plaintiff identifies one issue in this matter: whether she "submitted sufficient new and material medical evidence [to the Appeals Council] pertaining to the alleged period of disability to support remand." Doc. 10 at 2. Plaintiff argues that medical records she submitted to the Appeals Council, which show that Plaintiff had an MRI performed on her right knee in August 2017 and a hospital admission for asthma/COPD exacerbation in September 2017, could have reasonably resulted in greater exertional limitations in the RFC findings of the ALJ, which reasonably could have changed the VE's opinions about the availability of jobs for the hypothetical candidate, thereby changing the outcome of the ALJ's decision. Doc. 10 at 7–8.

## VI.  DISCUSSION

After the ALJ issued his decision in this case on November 1, 2017, Plaintiff requested review of the decision by the Appeals Council on December 14, 2017. R. 432. Plaintiff submitted the following medical records to the Appeals Council for its consideration:

8

> (1) records from Dr. Carlos Reyes-Sacin from May 23, 2017, through November 20, 2017;
>
> (2) records from Baptist South Medical Center from August 25, 2017, through September 25, 2017; and
>
> (3) additional records from Baptist South Medical Center, Dr. Trupti Nadka, and Dr. Carlos Reyes-Sacin for treatment from December 13, 2017, through June 27, 2018.

R. 2. In response to Plaintiff's request for review, the Appeals Council stated that it had considered Plaintiff's reasons for disagreeing with the ALJ's decision and had exhibited them in the record, but it denied Plaintiff's request for review. R. 1. With respect to the first and second sets of records described above, the Appeals Council stated: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." *Id.* With respect to the third set of records described above, the Appeals Council found that the records did not relate to the period at issue because the ALJ had decided Minor's case through November 1, 2017, and the records were for treatment after that date. R. 2.

With a few exceptions, a claimant may submit new evidence at each stage of the administrative process, including before the Appeals Council, and the Appeals Council must consider "new, material, and chronologically relevant evidence." *Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) (quoting *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)); 20 C.F.R. § 404.970(a)(5). The question of whether evidence is new, material, and chronologically relevant is a

9

question of law subject to de novo review. *Washington*, 791 F. App'x at 876 (citing *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015)). To be considered "new," evidence cannot be cumulative of the evidence already submitted to the ALJ. *Id.* at 876 (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). For evidence to be "material," there must be a reasonable possibility that the evidence would change the result. *Id.* (citing *Washington*, 806 F.3d at 1321). Finally, for evidence to be "chronologically relevant," it must relate to the period on or before the date of the ALJ's decision. *Id.*

If the Appeals Council denies review in a case, the new evidence becomes part of the administrative record that goes to the district court for review. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). The Court considers the new evidence as part of the record as a whole. *Id.* (stating that "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review"). If a claimant challenges the adequacy of the Appeals Council's evaluation of new evidence, a court may properly review the new evidence to see whether it is the type of evidence the Appeals Council should consider. *Edwards v. Colvin*, No. 2:14-CV-01173-KOB, 2015 WL 4459344, at *2 (N.D. Ala. July 21, 2015) (citing *Fry v. Massanari,* 209 F. Supp. 2d 1246, 1252 (N.D. Ala. 2001), in turn citing *Keeton,* 21 F.3d at 1067–1068).

This court has the authority to remand a case based on such evidence pursuant to 42 U.S.C. § 405(g) under a sentence four remand or reversal.[2] A reviewing court must determine whether the new evidence renders the denial of benefits erroneous. *See Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 784–85 (11th Cir. 2014) (citing *Ingram,* 496 F.3d at 1262); *see also Coleman v. Comm'r of Soc. Sec.,* 454 F. App'x 751, 754 (11th Cir. 2011) (citation omitted) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous"). In other words, to obtain a remand from a federal district court under sentence four of 42 U.S.C. § 405(g), "[a] claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.,* 522 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram,* 496 F.3d at 1266–67 and *Mitchell,* 771 F.3d at 785 (finding that "[t]he additional evidence was either cumulative of evidence before the ALJ or was not chronologically relevant, and none of it undermined the substantial evidence supporting the ALJ's decision")).

**(A)     Additional Evidence Relating to Plaintiff's Asthma/COPD**

The records submitted to the Appeals Council relating to Plaintiff's asthma and COPD include treatment records from May 23, 2017, through September 25, 2017. Again,

---

[2] The fourth sentence of § 405(g) provides a federal court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand is "based upon a determination that the Commissioner erred in some respect in reaching the decision to deny benefits," *Jackson v. Chater,* 99 F.3d 1086, 1095 (11th Cir. 1996), and is applicable when evidence was properly before the Commissioner but was not adequately considered by the Appeals Council, *Ingram,* 496 F.3d at 1268.

in describing its handling of these records, the Appeals Council simply stated that it found that the evidence "does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." R. 2. From this statement and in contrast to the records for treatment after the ALJ's decision, the Appeals Council found this evidence to be chronologically relevant. However, it is not clear to the Court whether the Appeals Council actually considered the evidence and found it to be cumulative (and, therefore, not new) and immaterial or if it refused to consider the evidence at all *because* it found the evidence to be cumulative and immaterial. Nonetheless, by stating that the evidence did not show a "reasonable probability of changing the outcome of the decision," it is clear that the Appeals Council at least implicitly found that the evidence was not material.

The records at issue show that Plaintiff went to the emergency room on September 21, 2017, for shortness of breath, difficulty breathing, and wheezing. R. 238, 242. She was admitted to the hospital and discharged four days later. R. 238–69. At admission, her oxygen saturation level was 95%, and she was in no acute distress. R. 244. She had severe wheezing, but her respirations were non-labored, her breath sounds were equal, and she had symmetrical chest wall expansion. R. 245. The physician who examined her approximately three hours after her arrival stated that she was "coughing and wheezing but not in any severe distress." R. 249. She was treated with steroids and breathing treatments, and, at discharge, she had the same oxygen rate of 95% after treatment that she had upon arrival. R. 268.

The records submitted to the Appeals Council also show that Plaintiff saw Dr. Carlos Reyes-Sacin four times between May 2017 and November 2017 for routine HIV management. R. 275–289. At the May and August visits, which occurred in the months shortly before the September 2017 hospital admission discussed above, Dr. Reyes-Sacin noted under pulmonary findings that Plaintiff had "no dyspnea, no paroxysmal nocturnal dyspnea, no orthopnea, no cough, no hemoptysis, and no wheezing," and he noted that respiration rhythm and depth were normal, her lungs were clear to auscultation, no wheezing was heard, and no rales/crackles were heard. R. 277–78, 283–84, 290–91. At the November visit, two months after her hospital admission, Dr. Reyes-Sacin made the same findings.[3]

In reaching his decision, the ALJ noted the following regarding Plaintiff's asthma and COPD:

> [T]he record shows a long history of treatment for these impairments, which were worsened by the claimant's ongoing tobacco use. However, treatment notes indicated that the impairment was largely controlled and caused no significant symptoms during almost all of the relevant period. Emergent notes show an extended exacerbation of asthma and COPD with related pneumonia and acute diastolic dysfunction in early September 2016 that resolved after a few days of inpatient treatment. Since that time, subsequent treatment notes show the claimant's treating sources managed her breathing symptoms with multiple baseline and rescue inhaled medications, in a regimen that was stable. At a March 8, 2017 admission for another issue, the claimant denied cough or shortness of breath. Her lungs were clear, breath sounds were equal, and her heart was normal in rate and rhythm, no edema noted.

---

[3] Plaintiff also visited Dr. Reyes-Sacin in October 2017, but it appears that the purposes of that visit was to obtain a flu vaccine, and no pulmonary findings were recorded.

R. 225. The Plaintiff's September 2017 asthma exacerbation is similar to her 2016 episode described by the ALJ in that it was resolved after a few days of inpatient treatment. Additionally, the records reflect that Plaintiff's asthma was stable and being managed by medication shortly before and after the September 2017 emergency room visit. Thus, because the records provide essentially the same information contained in the medical records considered by the ALJ and simply document the continuation of the Plaintiff's asthma and COPD, the Court finds that the new records are merely cumulative of the evidence already submitted to the ALJ. Further, because the September 2017 asthma exacerbation, which occurred one year after her previous episode, was resolved after a few days of inpatient treatment and because medical records before and after the episode reflect no wheezing or respiratory issues, there is no reasonable probability that the evidence would change the ALJ's decision. Thus, the records are not material. Because they are neither new nor material, the Appeals Council was not required to consider them.[4] *See Ingram,* 496 F.3d at 1261.

---

[4] Plaintiff has not contested the Appeals Council's determination that the remainder of the newly submitted medical records are not chronologically related to the time period at issue. However, the Court notes that, even if the Appeals Council had considered them, they do not create a reasonable probability that the ALJ's decision would be changed. Following her September 2017 hospital admission, Plaintiff went to the emergency room four times. In December 2017, her oxygen level was 95%. R. 63–64. Wheezing was present (R. 72), but she was noted as having "mild respiratory distress" and was "comfortable talking" (R. 76). The impression noted on one x-ray was "most suspicious for pulmonary edema," but the doctor noted that the x-ray impression contradicted her clinical findings, as the patient had no signs of fluid overload and no crackles on auscultation. R. 67, 76–77. A second x-ray showed "[n]o convincing evidence of active pulmonary disease." R. 98, 140. At discharge, she was described as never being in respiratory distress. R. 140–41. On January 28, 2018, Plaintiff went to the emergency room for chest pain and numbness in her left arm. R. 143. Her oxygen was 98% and she had clear lungs. R. 143. Her respirations were non-labored and her breath sounds were equal, although she had slight wheezing. R. 163. The discharge summary listed "mild exacerbation" of her COPD and "moderate expiratory wheezing." R. 186. On February 18, 2018, she went to the emergency room for seizure activity, but she also reported shortness of breath. R. 194. Her oxygen level was 99%, her lungs were clear, and her respirations were non-labored with equal breath sounds. R. 197. Finally, on May 16, 2018, she went to the emergency room for shortness of breath, but her

**(B)  Additional Evidence Relating to Plaintiff's Right Knee**

Plaintiff's additional evidence concerning her right knee consisted of a two-page MRI report from an emergency room visit to Baptist South on August 25, 2017. R. 236–37. This MRI impression reads: "1. Complex tears of the posterior horn/body of the medial meniscus.  2. Gray [sic] II strain MCL.  3. Large joint effusion and Baker's cyst.  4. Chondral malacia patella." *Id.*  Plaintiff asserts that the record before the ALJ did not include any treatment or diagnosis relating to her right knee, so the MRI necessarily constitutes new evidence of an additional medical impairment not previously considered for the relevant time period. Doc. 10 at 5.

Plaintiff's MRI report, considered alone, offers no insight into the length of time it would take for the tear, strain, or effusion to heal;[5] whether treatment would be as simple as applying ice and resting or if surgery or some other form of treatment would be required; or how the conditions would affect Plaintiff's ability to work.  However, Plaintiff's other medical records shed light on how the condition may have affected the Plaintiff.  When Plaintiff saw Dr. Reyes-Sacin in May 2017, approximately three months before the August MRI, she complained of right leg swelling and difficulty with balance and walking at times, but the doctor found no arthralgias, no soft tissue swelling, no localized joint swelling, and no localized joint stiffness.[6] R. 289–90.  She had normal movement of all extremities, and

---

oxygen saturation level was 98% when admitted (R. 42–43), and a chest x-ray showed that her lungs were clear with "no evidence of acute cardiopulmonary disease" (R. 61).
[5] *See* C.F.R. § 404.1505, requiring that a physical or mental impairment be expected to last for a continuous period of not less than 12 months.
[6] Although most of Plaintiff's visits to Dr. Reyes-Sacin were for routine HIV management, Plaintiff's medical records show that she raised other issues with him.  For instance, his records reflect discussions

her gait and stance were normal. R. 291–92. At subsequent visits to Dr. Reyes-Sacin on August 24, 2017 (the day before her MRI), and on November 20, 2017 (three months after the MRI), there is no mention of right knee pain, and Dr. Reyes-Sacin made the same musculoskeletal findings at those visits as he did at the May 2017 visit.[7] R. 275–89. Additionally, the medical records from Plaintiff's emergency room visit for asthma exacerbation one month after the MRI show that, by then, Plaintiff had a normal range of motion, normal strength, no tenderness, no swelling, and no deformity. R. 245, 251, 253, 257, and 261. Thus, Plaintiff's medical records after the MRI suggest that any problems with Plaintiff's right knee had already been resolved by the time she went to the emergency room in September 2017 and by the time she saw Dr. Reyes-Sacin in November 2017.

### C. The Record as a Whole

Ultimately, in order to remand a case under sentence four of 42 U.S.C. § 405(g) based on newly submitted evidence, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous because the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Mitchell,* 771 F.3d at 784–85 (citing *Ingram,* 496 F.3d at 1262); *see also Coleman v. Comm'r of Soc. Sec.,* 454 F. App'x 751, 754 (11th Cir. 2011) and *Timmons v. Comm'r of Soc. Sec.,* 522 F.

---

about vision problems, left knee pain, Bell's Palsy, hypertension, scoliosis, mental issues, prediabetes, and asthma.

[7] As with Plaintiff's asthma and COPD, the Plaintiff's medical records that the Appeals Council deemed not to be chronologically relevant do not support Plaintiff's claim that any problems with her right knee would change the ALJ's decision. At doctor's visit on March 18, 2018, Plaintiff complained of left leg pain but did not mention any problems with her right leg. R. 16. The medical records from another visit on June 27, 2018, lists many of Plaintiff's conditions and complaints, but again there is no mention of right knee or leg pain. R. 23–38.

App'x 897, 902 (11th Cir. 2013) (citing *Ingram,* 496 F.3d at 1266–67 and *Mitchell,* 771 F.3d at 785). The undersigned has carefully and independently reviewed the entire record. As the ALJ correctly noted, Plaintiff's medical records show that she has a long history of treatment for asthma and COPD. However, those records include one episode of asthma exacerbation, which was resolved after a few days of inpatient treatment, but they otherwise show that these conditions were stable and managed with medication. The ALJ's RFC accounted for Plaintiff's conditions by restricting her from concentrated or excessive exposure to pulmonary irritants, and the Court finds that one additional episode of exacerbation occurring one year after the previous episode does not undermine the ALJ's decision. This is especially true considering that Plaintiff's medical records before and after the episode show that Plaintiff was experiencing no respiratory problems. For instance, on April 17, 2017, her treating physician, Dr. Reyes-Sacin, described her asthma as "uncomplicated mild intermittent asthma." The emergency room records dated after the ALJ decision describe her condition as "mild respiratory distress" and "mild exacerbation," and x-rays indicate "no evidence of acute pulmonary disease."

With respect to Plaintiff's leg or knee pain, Plaintiff argues that the new MRI could have resulted in greater limitations on the Plaintiff's capacity for physical exertion, including her ability to lift, stand, or walk. However, as the ALJ correctly noted, the record shows that Plaintiff's left leg had a full range of motion, no swelling, good stability, and full weight-bearing ability. R. 226. The ALJ had no records before him relating to the Plaintiff's right leg, but, again, Plaintiff's MRI alone does not undermine the ALJ's determination of Plaintiff's RFC or his decision, as there is no mention of right knee pain

on the day before the MRI and medical records after the MRI suggest that the issue had been resolved because Plaintiff had no swelling, no stiffness, and normal strength and range of motion.

## VII. CONCLUSION

In conclusion, the Court finds that the evidence submitted to the Appeals Council relating to Plaintiff's asthma and COPD was cumulative of previous evidence and was not material, and it finds that the new evidence relating to Plaintiff's right knee was not material. As a result, the Appeals Council was not required to consider the evidence. Having considered the newly submitted evidence in conjunction with the other evidence in the administrative transcript, the Court finds that the decision to deny benefits remains supported by substantial evidence. Accordingly, there is no need to remand the case for further consideration of this additional evidence. For these reasons, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 27th day of March, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE